**Sandra Ann CHAMBERS, Plaintiff–Appellant,**

v.

**The HABITAT COMPANY, et al., Defendants–Appellees.**

No. 02–1990.

United States Court of Appeals, Seventh Circuit.

Submitted June 5, 2003.*

Decided June 9, 2003.

Rehearing and Rehearing En Banc Denied July 22, 2003.

---

* After examining the briefs and record, we conclude that oral argument is unnecessary.

Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before EASTERBROOK, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

Sandra Ann Chambers was evicted from her federally subsidized apartment and brought this action against various parties involved with her eviction. The district court, reasoning that Chambers was trying to void the earlier state-court eviction ruling, dismissed her suit as barred by the *Rooker–Feldman* doctrine. We vacated that judgment because the *Rooker–Feldman* doctrine was inapplicable to some of Chambers's claims and was of uncertain relevance to the others. We directed the district court on remand to determine whether any of the latter claims implicated issues that could have been raised in the state-court litigation and thus would be subject to the doctrine as "inextricably intertwined" with the state-court judgment. *Chambers v. Habitat Co.*, No. 99–2460, 2000 WL 748117, at *3 (7th Cir. June 7, 2000). On remand Chambers twice amended her complaint, alleging claims under 42 U.S.C. § 1983; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692–1692o; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961–68; as well as other federal and state claims. The district court dismissed both amended complaints, concluding that each claim either was untimely, failed to state a claim upon which relief could be granted, or was barred by the *Rooker–Feldman* doctrine or collateral estoppel. We affirm.

The details of the eviction were sufficiently set forth in our earlier decision, and we need not repeat them here. It is enough to say that in the state proceedings Chambers unsuccessfully challenged her eviction on the ground that she had gotten behind in her rent payments because her landlord failed to lower her rent to reflect a decrease in her income as required by federal law.

On appeal Chambers first challenges the dismissal of her § 1983 claim that the defendants violated her due process rights by omitting from her lease and her eviction notice language allegedly required by regulations issued by the United States Department of Housing and Urban Development ("HUD"). The district court dismissed this claim based on the *Rooker–Feldman* doctrine, which precludes lower federal courts from reviewing claims that were raised in, as well as "inextricably intertwined" with, state-court decisions. *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482–83 & n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Epps v. Creditnet, Inc.*, 320 F.3d 756, 759 (7th Cir. 2003). Chambers argues that the district court erred in relying on that doctrine because we held in our previous decision that her claim was not barred: "the *Rooker–Feldman* doctrine ... does not bar Chambers' claims for money damages under ... § 1983 for the alleged violation of her due process rights." *Chambers*, 2000 WL 748117, at *3. A few lines later in our decision, however, we instructed the district court to consider on remand whether several of Chambers's claims–including her claim that the defendants had failed "to comply with federal laws and regula-

tions governing subsidized housing"–raised issues that were "germane" to the dispute over possession of the apartment and thus were "inextricably intertwined" with the state-court judgment. *Id.* Thus, the district court did not err in considering whether the *Rooker–Feldman* doctrine barred Chambers's due process claim premised on the defendants' purported noncompliance with the HUD regulations.

■ Still, Chambers argues that the *Rooker–Feldman* doctrine does not bar this § 1983 claim because she could not have made an issue of the HUD regulations in defending the defendants' forcible entry and detainer action. The *Rooker–Feldman* doctrine is inapplicable to a claim that could not have been raised in the state proceedings, even if the claim touches upon issues litigated in state court. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557, 559 (7th Cir.1999). In Illinois, only claims or defenses that are germane to the right of possession may be raised in a forcible entry and detainer proceeding. *People ex rel. Dep't of Transp. v. Walliser*, 258 Ill.App.3d 782, 196 Ill.Dec. 345, 629 N.E.2d 1189, 1194 (Ill.App.Ct.1994). One category of such issues includes "claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession." *Id.* Because Chambers alleged that the HUD omissions rendered her lease illegal, the claim is germane to the issue of possession and could have been raised in the state action. *See id.* at 1196 (holding that landlord's alleged violation of federal housing regulation was a defense germane to possession); *S. Austin Realty Assoc. v. Sombright*, 47 Ill.App.3d 89, 5 Ill.Dec. 472, 361 N.E.2d 795, 798 (Ill.App. Ct.1977) (holding that defendant in forcible entry and detainer action may assert defenses and counterclaims for equitable relief based on landlord's violation of federal housing law); *see also Johnson v. Ill. Dept. of Pub. Aid*, 467 F.2d 1269, 1273 (7th

Cir.1972) ("[N]oncompliance with HUD circulars applicable to federally-funded local housing authorities is a defense in an eviction proceeding [in Illinois] . . . ."). As for the alleged omissions from Chambers's eviction notice, that issue is also germane to the issue of possession. *See Walliser*, 196 Ill.Dec. 345, 629 N.E.2d at 1195 (treating challenge to adequacy of notice provided to tenant as germane to possession); *Arco Petroleum Prods. Co. v. Williams*, 146 Ill.App.3d 218, 100 Ill.Dec. 33, 496 N.E.2d 1098, 1099–1100 (Ill.App.Ct.1986) (analyzing defense of insufficient notice in forcible entry and detainer action). Accordingly, both aspects of this § 1983 claim are "inextricably intertwined" with the state judgment, and therefore the *Rooker–Feldman* doctrine deprived the district court of jurisdiction.

■ Chambers also challenges the dismissal of another § 1983 claim, which asserts that her due process rights were violated by the adjudication of the forcible entry and detainer claim via summary judgment instead of by a jury trial. The district court found that Chambers was collaterally estopped from raising this claim because the state appellate court fully analyzed it and found no due process violation. We conclude, however, that the *Rooker–Feldman* doctrine bars this claim, and, because that doctrine is jurisdictional, the district court had no power to address the affirmative defense of collateral estoppel. *See Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 703 (7th Cir. 1998). Chambers's alleged injury resulted from the summary judgment order itself– an order that she wants us to invalidate by finding that its entry violated due process. That is precisely what *Rooker–Feldman* forbids. *See Rizzo v. Sheahan*, 266 F.3d 705, 713 (7th Cir.2001). Chambers cannot manufacture federal jurisdiction by labeling her claim a civil rights action and by

seeking monetary damages. *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825 (7th Cir.1999).

■ Chambers next challenges the dismissal of her claims based on the FDCPA. These claims arise from the attempts of her apartment building's management agent, The Habitat Company, to obtain reimbursement for the owner's attorneys' fees by adding charges for "legal collections" to monthly invoices it sent for rent. Although Habitat was the only defendant to send her these bills, Chambers raised FDCPA claims against Habitat, Long Grove House (the housing complex from which she was evicted), Daniel Levin (the owner of Long Grove House), Alecia Smith and Lynn Mosley (employees of Habitat), and Sanford Kahn, Ltd. (the law firm that represented Habitat in the forcible entry and detainer proceedings). The district court concluded that the only defendant who qualified as a "debt collector" under the FDCPA was Sanford Kahn. The court therefore dismissed the FDCPA claims against the remaining defendants, concluding that they were either Chambers's creditors or employees of her creditors. *See* 15 U.S.C. § 1692a(6). But the district court was too quick to determine that Habitat is a creditor because it did not analyze whether Habitat's collection activities on behalf of Long Grove rendered it a debt collector. *See* 15 U.S.C. § 1692a(6) (defining "debt collector" as one who "regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another"). Nevertheless, we cannot determine Habitat's status based on the allegations in the complaint, so we will accept as true Chambers's allegation that Habitat is a debt collector.

In any event, the FDCPA claims against Habitat and Sanford Kahn fail because Chambers has pleaded herself out of court. Chambers contends that the defendants violated the FDCPA because various federal, state, and local laws, as well as a 1978 state-court injunction, prevent Habitat from collecting attorneys' fees from tenants. But her complaint makes clear that the real issue is whether she is liable for the attorneys' fees, not whether the defendants engaged in unlawful collection practices. Chambers does not allege any conduct on the part of the defendants intended to harass or oppress her, such as using obscene language or repeatedly calling her on the telephone. *See* 15 U.S.C. § 1692d. She also does not allege that the defendants used "any false, deceptive, or misleading representation or means" to collect the fees, such as misrepresenting the value of the services rendered. *See* 15 U.S.C. § 1692e. Because the FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts, we uphold the district court's dismissal of Chambers's claims under the FDCPA.

■ Chambers's RICO claim is also based on the defendants' collection attempts and is similarly without merit. All of her RICO allegations require a pattern of racketeering activity, *see McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir.1994), which consists of at least two predicate acts of racketeering, including mail fraud and extortion, committed within a ten-year period, 18 U.S.C. § 1961(1), (5). Chambers contends that the defendants committed numerous predicate acts of mail fraud by mailing her bills for attorneys' fees that she contends are illegal. But Chambers alleges nothing fraudulent about the billed amounts, *e.g.*, that the law firm had billed for work not actually performed or that Habitat had intentionally overstated the fees billed to Long Grove when it sought reimbursement from Chambers. *See* Fed. R.Civ.P. 9(b) (allegations of fraud must be stated with particularity); *McDonald*, 18 F.3d at 495 (RICO claim failed because

plaintiff did not "allege any acts of deceit or chicanery ... which would give rise to a scheme to defraud for the purposes of mail fraud"). And even if Habitat is attempting to collect attorneys' fees in a manner that is wrongful in some way, Chambers still must allege that its conduct was fraudulent. *McLaughlin v. Anderson*, 962 F.2d 187, 192–93 (2d Cir.1992) (plaintiff must allege element of deception for a RICO claim based on mail fraud; allegation of wrongful conduct insufficient); *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315, 317 (9th Cir.1990) (rejecting tenant's mail fraud RICO claim against landlord who sent letter seeking fees not allowed under statute and concluding that a "violation of a statute does not necessarily demonstrate a scheme to defraud"). Accordingly, Chambers has not alleged any predicate acts based on mail fraud to support a RICO violation.

Chambers also argues that she alleged one predicate act of extortion by claiming that one of Habitat's attorneys told her that he would have Habitat recalculate her rent if she paid his fees. But even were this sufficient to allege an act of extortion, the requisite *pattern* of racketeering activity requires at least two predicate acts. 18 U.S.C. § 1961(5). Thus, the district court correctly concluded that Chambers failed to state a RICO claim.

Chambers's remaining claims merit little discussion. First, regarding the defendants' attempts to collect attorneys' fees, Chambers fails to state any claim for consumer fraud, deceptive business practices, common law fraud, deceit, conspiracy, harassment, or false statements. As explained above, Chambers alleges nothing fraudulent, deceitful, or false on the part of the defendants; the parties merely disagree about whether Chambers is liable for the attorneys' fees. Chambers likewise fails to state a claim for malicious prosecution, abuse of process, defamation, unjust enrichment, or intentional infliction of emotional distress; the defendants' actions do not even come close to meeting the elements of any of these theories. And as for the claim that the defendants violated the Chicago Landlord and Tenant Ordinance by attempting to collect attorneys' fees, the cited provisions of the ordinance do not preclude the defendants from collecting such fees. CHICAGO, ILL., CODE §§ 5–12–140, 5–12–180.

Lastly, Chambers challenges various procedural rulings by the district court. She contends that the court abused its discretion by denying her leave to add additional defendants, refusing to appoint counsel to pursue her case as a class action, and allowing the defendants to file late their reply brief in support of their motion to dismiss. The district court has considerable discretion in deciding these procedural matters, and we see no error in the court's exercise of that discretion.

Accordingly, we AFFIRM the judgment of the district court as modified by this order.